## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

TRACEY L. NICHOLS,

                Plaintiff,

v.

                                        Case No. 19-12945

CANTORO'S CAFE, L.L.C.,

                Defendant.

_____/

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND EXTENDING DISCOVERY CUTOFF TO JULY 6, 2020

Plaintiff Tracey L. Nichols sues Defendant Cantoro's Café, L.L.C., for discrimination and retaliation, in violation of the Americans with Disabilities Act ("ADA") and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). (ECF No. 1.) Plaintiff also alleges retaliation under Michigan's Workers' Disability Compensation Act ("WDCA"). (*Id.*) The dispute arises from Plaintiff's alleged demotion and eventual termination as a result of a work injury to Plaintiff's left ankle.

Plaintiff moves to compel Defendant to answer interrogatories and to produce records. (ECF No. 13.) Defendant responded and Plaintiff replied. (ECF Nos. 14, 15.) The court finds a hearing unnecessary, and for the reasons provided below, the court will grant Plaintiff's motion. E.D. Mich. L.R. 7.1(f)(2).

### I.  BACKGROUND

The following facts are alleged in Plaintiff's complaint. The court makes no overt findings as to truth or falsity.

Plaintiff was hired by Defendant as a "Bakery Assistant Manager." (ECF No. 1, PageID.2, ¶ 6.) Almost two years after obtaining the position, Plaintiff injured her left ankle while at work on June 6, 2018. (*Id.*, ¶ 7.) Due to the condition, Plaintiff had limited walking ability and was forced to sit for 60% of the day. (*Id.*, ¶ 8.)

Plaintiff informed Defendant of her condition and limitations on June 27. (*Id.*, ¶ 10.) Plaintiff was told to not come into work for the day of June 28 and was then demoted to "Production Worker" on June 29. (*Id.*) Plaintiff had asked repeatedly for an accident form to detail her work-related injury and qualify for workers compensation and short-term disability. (*Id.*, PageID.3, ¶ 11.) Defendant gave Plaintiff the form on June 29, at the same time that Defendant informed Plaintiff she was demoted. (*Id.*)

Defendant provided Plaintiff a bar stool and a low-lying Adirondack chair. (*Id.*, ¶ 12.) Plaintiff protested, but no other chair was provided and Defendant told her to "go see a chiropractor." (*Id.*, ¶¶ 13, 15.) Plaintiff was forced to work standing up and was terminated after a week and a half, on July 10, 2018. (*Id.*, ¶ 14.)

Plaintiff filed suit in November 2019, alleging violations of the ADA, the PWDCRA, and the WDCRA. Plaintiff served discovery requests asking for interrogatory answers and records regarding other employees hired by Defendant, employees hired to replace Plaintiff, Defendant's disability accommodations, Plaintiff's demotion and termination, Plaintiff's performance in comparison to peers, and roles, addresses, and personnel records of those involved in Plaintiff's termination. (ECF No. 13-2 (Plaintiff's first set of interrogatories); ECF No. 13-3 (Plaintiff's second set of interrogatories); ECF No. 13-4 (Plaintiff's requests for production).) Defendant filed a skeletal response, predicting the possibility of informal resolution (settlement), citing no law, but proffering

that supplemental responses to Plaintiff's discovery requests had been sent. (ECF Nos. 14-2, 14-3, 14-4.)

## II.  STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides the standard for discoverable information. A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discoverable information need not itself be admissible evidence. *Id.*

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Discovery "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Examples of areas off limits to discovery include those "that [are] relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information is otherwise relevant to issues in the case." *Lewis*, 135 F.3d at 402.

## III. DISCUSSION

Defendant has filed discovery responses in an attempt to supplement its original responses. Plaintiff maintains the responses are inadequate, and the court will address Plaintiff's concerns in the order in which they are presented in her reply.

3

## A. Interrogatories Numbers 1, 2, and 4

Plaintiff first requested Defendant to "identify and describe in detail all factors that caused Defendant to terminate Plaintiff's employment." (ECF No. 14-2, PageID.135.) Defendant responded generally, saying that Plaintiff had an "unsatisfactory job performance," "a toxic attitude," was "disrespectful to supervisors," "created an environment in which other employees were scared," and "misinformed other employees" on company policies. (ECF No. 14-2, PageID.135.) Plaintiff requested additionally the names of witnesses used to come to these conclusions, a description of what witnesses observed, the dates witnesses made their observations, and other dates Plaintiff's behavior added support for demotion or termination. (ECF No. 14-2, PageID.135; ECF No. 15, PageID.175.) Specifically, Plaintiff sought the names of the "other employees" who were allegedly misinformed by Plaintiff. (ECF No. 15, PageID.176.)

The motivations behind Defendant's decisions to demote and eventually terminate Plaintiff are central to Plaintiff's claims. *E.g. Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (quoting *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002) (emphasis added) ("To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against *solely because of the disability.*") The court finds all of Plaintiff's requests reasonable, proportional, and relevant to Plaintiff's case. Fed. R. Civ. P. 26(b)(1).

4

Second, Plaintiff asked for the identity of other individuals with knowledge of the factors that led to Plaintiff's termination and a general statement of their knowledge. (ECF No. 14-2, PageID.135-36.) Defendant has provided the names of two employees, Katie Klann and Joe Bernardini, and also mentioned "other employees" may have knowledge. (*Id.*, PageID.136.)

Defendant must respond fully to the question, which is relevant and not overly burdensome. Fed. R. Civ. P. 26(b)(1). If there are other employees known to Defendant who have knowledge regarding the grounds of Plaintiff's termination, it must provide them to Plaintiff. Further, Defendant must provide a general, non-exhaustive, statement regarding their knowledge.

Third, Plaintiff sought the same information just described, but for Plaintiff's demotion. (ECF No. 14-2, PageID.137.) Defendant reiterated the same general factors used to terminate Plaintiff to explain her demotion. (*Id.*) Defendant also pointed Plaintiff to Plaintiff's employment file, the employee handbook, and "other policy documents." (*Id.*)

More detailed responses are required. The court will order Defendant to provide the names of witnesses who observed the conduct that justified Plaintiff's demotion, the names of witnesses who otherwise may have information regarding Plaintiff's demotion, dates of observation, dates that support was added for demotion, and a general statement of knowledge for each witness, as Plaintiff requested.

### B. Interrogatory Number 7

Plaintiff requested the names and addresses of "each and every person who has knowledge of Plaintiff's work performance and/or behaviors while she has worked for

5

Defendant." (*Id.*, PageID.139.) She also asked for detail of the facts each witness observed. (*Id.*) Defendant has listed Katie Klann and Joe Bernardini. (*Id.*, PageID.140.)

The court will direct Defendant to identify any other individuals Defendant knows may have information on Plaintiff's performance, behavior, and quality as an employee for Defendant. Additionally, Defendant must provide a short, generalized description of each potential witnesses' knowledge. Defendant need not detail extensively the substance of each witness's testimony, nor is it expected to produce information it does not have. Nonetheless, a short general statement of knowledge would allow Plaintiff evaluate the need to depose a given individual; it is information most efficiently produced by Defendant and should not require extensive time or effort. Moreover, this same species of information is required by the court's scheduling order: "Witness lists must include after each witness's name an informative synopsis (one or two sentences) outlining the witness's expected testimony." (ECF No. 11, PageID.42.)

### C. Interrogatory Number 9

Plaintiff requested information on explanations and warnings provided to Plaintiff about her allegedly inadequate performance. (*Id.*) Specifically, Plaintiff sought the names of those who "informed Plaintiff that her performance and/or behaviors . . . [were] unsatisfactory," the dates this information was communicated to Plaintiff, the "substance of the criticism directed at Plaintiff" on those occasions, any criticism reduced to writing, and written records documenting information provided to Plaintiff. (*Id.*) Defendant provided the name of Katie Klann and two dates, but provided no written documentation. (*Id.*, PageID.141-42.) Defendant states additionally Klann *may* "testify" as to the factors of Plaintiff's termination already provided. (*Id.*)

What Plaintiff's supervisors told her regarding her performance at work, and whether those discussions related to Plaintiff's alleged disability, is relevant to Plaintiff's claims. If the explanations were substantive and justified, it may undermine Plaintiff's argument that she was demoted and fired due to her disability. *Talley*, 542 F.3d at 1105. If they were weak, poorly justified, or even overtly discriminatory, Plaintiff may have stronger evidence to support her claim. *Id.*; *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 813 (6th Cir. 1999) (If an employer has "offered a legitimate, nondiscriminatory reason for its actions, the burden . . . shift[s] back to [the employee] to show that the reason was pretextual and that discrimination against his disability was the real motivation for the [employers] actions.").

Requests for information as to what Plaintiff was told on the two dates of criticism identified by Defendant is relevant and not disproportionate. Fed. R. Civ. P. 26(b)(1). Defendant must answer fully and to the best of its knowledge. If, upon reasonable inquiry, it does not have such information, it is Plaintiff's responsibility to proceed with whatever discovery she deems appropriate. Defendant must also provide any written documentation of warnings or discussions made with Plaintiff regarding her performance.

Defendant would not be required to disclose information obtained solely through confidential attorney-client privilege. *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (Attorney-client privilege applies only: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6)

are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.").

### D.  Interrogatory Number 10

Plaintiff sought the identity of Defendant's employees who were involved in the decision to demote and terminate Plaintiff, a description of the role each employee played, and the dates for each decision. (ECF No. 14-2, PageID.142.) Defendant responded with the names of Katie Klann and Joe Bernardini, their position in Defendant's company, and the dates of Plaintiff's demotion and termination. (*Id.*) Defendant did not provide a description of the employees' roles in the two events. (*Id.*, PageID.142-43.)

The court finds it relevant and reasonable for Defendant to provide, to the best of its knowledge, a general description of the roles, responsibilities, and authorities Katie Klann and Joe Bernardini had with regard to Plaintiff's demotion and termination. For instance, this may include a short statement on who had the final authority to make the employment decisions and whether one of the employees had solely an advisory role.

### E.  Interrogatory Number 11 and Requests for Production Numbers 6 and 9

Plaintiff requested information regarding her pay and the potential pay she would have received had she not been terminated. Specifically, Plaintiff requested the identity and description of "compensation, bonuses, and fringe benefits that were awarded to Plaintiff while in the employ of Defendant . . . [and] that she could have earned had she continued." (*Id.*, PageID.143.) She also seeks description of increases of pay for similarly situated workers, copies of documents "reflecting bonuses/commissions and/or overtime paid to all Bakery employees [working for Defendant]" after the date of

8

Plaintiff's termination, and copies of "the bonus plan or plans and any and all other employee benefit plans pertaining to Plaintiff" if she had continued employment. (*Id.*, PageID.143-44; ECF No. 13-4, PageID.119-20, 121.) Defendant responded with Plaintiff's per hour pay, without specification as to whether that pay applied before or after Plaintiff's demotion. (ECF No. 14-2, PageID.143-44; ECF No. 13-4, PageID.119-20, 121.)

Records and information on Plaintiff's compensation is vital to valuing Plaintiff's compensatory damages if she succeeds in her claims. *Siewertsen v. Worthington Indus., Inc.*, 783 Fed. App'x 563, 576 (6th Cir. 2019) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) ("Once a finding of discrimination has been found, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."). This is all the more important where "to prevail on a claim for back pay a plaintiff must establish the amount of back pay with reasonable certainty." *Id.* (quoting *Szeinbach v. Ohio State Univ.*, 820 F.3d 814, 820 (6th Cir. 2016)).

Plaintiff contends a confidentiality agreement has already been made and if it has not, the court would find it appropriate to issue a protective order for salary and compensation information. However, Defendant must provide all information and records Plaintiff has identified in its requests on this issue. Plaintiff's benefits and income, the benefits and income of similarly situated employees and employees in Defendant's Bakery, and bonus and benefit plans applicable to Plaintiff if she would have remained as Defendant's employee are discoverable.

The court sees no reason why Defendant would be forced to disclose information protected by attorney-client privilege or work product, and Defendant presents no law to substantiate an argument to that effect. Defendant does not detail a single document or specific information that resulted *solely* from confidential client communication or was prepared *solely* "in anticipation of litigation." *Reed*, 134 F.3d at 355-56; *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (quoting Fed. R. Civ. P. 26(b)(3)) (Work product "protects (1) 'documents and tangible things'; (2) 'prepared in anticipation of litigation or for trial'; (3) 'by or for another party or its representative.'"). The requests are not overly burdensome considering their significant relevance. Fed. R. Civ. P. 26(b)(1).

### F. Interrogatory Number 13 and Request for Production Number 17

Plaintiff sought discovery regarding Defendant's affirmative defenses. The court first notes that Defendant has included forty-one purported "affirmative defenses." Defendant asserted, among other things, that Plaintiff failed to state a claim upon which relief can be granted. (ECF No. 4, PageID.16.) No motion to dismiss has been presented under Federal Rule of Civil Procedure 12(b)(6) or for a judgment on the pleadings under Rule 12(c). Additionally, Defendant claimed that Plaintiff's suit is barred by a statute of limitations. (ECF No. 4, PageID.16.) Defendant has yet to substantiate this in a dispositive motion.

The court identifies these two defenses as examples of the potential to distract from discovery on the actual claims Plaintiff will pursue and Defendant will contest. It is not helpful to the parties or the court to spin their wheels addressing myriads of "defenses" that in truth are not, and that will not affect the outcome of the case.

10

Nonetheless, Plaintiff requested Defendant identify the facts and documents it relies on to assert its affirmative defenses. (ECF No. 14-2, PageID.145-46; ECF No. 14-3, PageID.161-62.) Defendant has responded listing the reasons it says Plaintiff was terminated as well as pointing to Defendant's employee handbook, Plaintiff's personnel file, and "other relevant documents." (ECF No. 14-2, PageID.145-46; ECF No. 14-3, PageID.161-62.)

Any and all documentation or records relevant to Defendant's affirmative defenses must be produced. They concern "a party's . . . defense[s]" and are not overly burdensome. Fed. R. Civ. P. 26(b)(1). Defendant must also provide a short factual statement on the basis of each affirmative defense or withdraw it. The court recommends the latter if Defendant does not seek to use them to challenge the sufficiency of Plaintiff's pleadings. *Affirmative Defense*, Black's Law Dictionary (11th ed. 2019) ("A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true."); *see also* Fed. R. Civ. P. 15(a)(2) (Amendments to Pleadings Before Trial: "[A] party may amend its pleading [with] . . . the court's leave. The court should freely give leave when justice so requires.").

### G. Interrogatories Numbers 14, 15, 16, and 17 and Requests for Production Numbers 2, 3, 4, 5, 12, 14, 20, 21, 22, and 23

Plaintiff sought discovery on similarly situated employees working for Defendant. First, she requested the name and date of hire for all employees managed by Katie Klann since January 1, 2016; their job title, pay grade, departments, locations, and performance reviews while managed by Katie Klann; identification and description of any requests for accommodation, the date of any request, Defendant's response, and

the duration of accommodation; identification and description of medical care sought from an on-the-job injury and whether an employee completed an accident form; and any change in job status, the date of any change, and the job title, pay grade, and placement location of the employee after the change. (ECF No. 14-2, PageID.146-47.) Defendant refused to provide this information. (*Id.*)

This topic is directly relevant to the determination of whether Plaintiff was subjected to discrimination. If similarly situated employees were apparently treated more favorably, that could be proof of discriminatory intent. *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999) (For ADA claims, a prima facie case discrimination may be supported "by showing that similarly situated non-protected employees were treated more favorably."). Subject to reasonable privacy considerations, addressed by Plaintiff's confidentiality agreement or a court protective order, all the information Plaintiff sought is discoverable and is not disproportionate. Fed. R. Civ. P. 26(b)(1).

Second, Defendant did not provide discovery in response to Plaintiff's requests for: information and records on "any interactive process that Defendant allegedly engaged in pursuant to its duties under the ADA" for employees managed by Katie Klann since January 1, 2016; the personnel file, as well as notes, documents, memoranda, and writings on performance, ranking, and behaviors for employees managed by Katie Klann since January 1, 2016; the identity and details of positive or negative personnel actions for any employee of Defendant that Defendant will utilize to prove non-discriminatory intent; personnel records and any written documentation regarding qualifications of Plaintiff's replacements; records on "individuals considered,

the criteria established, and the means by which Plaintiff's replacement(s) was (were) chosen;" documentation on Plaintiff's performance ranking compared to other employees; "[c]opies of any . . . warning notices, probationary memoranda and/or discipline" for employees managed by Katie Klann since January 1, 2016; records on accommodation requests and management responses for employees managed by Katie Klann since January 1, 2016; documentation on the involvement of government agencies tasked with enforcing anti-discrimination laws regarding "any decision maker involved in any decision materially affecting Plaintiff's employment;" and records compiled after January 1, 2016 concerning Defendant's actions in response to employees at Plaintiff's store location completing accident forms and requesting medical treatment after an on-the-job injury. (ECF No. 14-2, PageID.147-49; ECF No. 14-3, PageID.154-56, 159-60, 163-66.)

The court will order Defendant to respond to all these discovery requests. The information sought is relevant to Plaintiff's discrimination claim, including Plaintiff's burden to prove discriminatory intent, and is not overly burdensome. *Reed*, 134 F.3d at 355-56; *Hopkins*, 196 F.3d 655, 660; Fed. R. Civ. P. 26(b)(1). No documents covered by attorney-client privilege or the work-product doctrine should be affected; privacy will be protected with stipulations or a court protective order.

### H.  Requests for Production Numbers 11 and 16

Lastly, Plaintiff sought records on two "decisionmakers" identified by Defendant, Katie Klann and Joe Bernardini. First, Plaintiff requested all documents "that describe Defendant's training procedures for managers in the anti-discrimination laws and Defendant's policies against discrimination." (ECF No. 14-3, PageID.158.) Defendant

does not contest this request and has produced its employee handbook. The court understands this to be the extent of all documents Defendant has in its possession, lest Defendant risk sanctions for providing a false statement or concealing evidence. No order on this topic is needed.

Second, Plaintiff requested the personnel records of each of Defendant's employees involved in the decision to demote and to terminate Plaintiff. (*Id.*, PageID.161.) Defendant refused to provide such records and the court will order Defendant to do so. Information on the behavior and actions of Plaintiff's supervisors and those who (allegedly) took adverse employment actions against Plaintiff could shed light on their intent in demoting and terminating Plaintiff. If the records illustrate that Defendant's employees were documented to have treated similarly situated employees better than Plaintiff, and were shown to lack training or expertise in anti-discrimination policies, the information would be relevant to Plaintiff's discrimination claims. *Reed*, 134 F.3d at 355-56; *Hopkins*, 196 F.3d 655, 660; Fed. R. Civ. P. 26(b)(1). To the extent a court order is necessary to protect the privacy interests of other employees, the court will issue a protective order upon the parties' request.

## I.  Sanctions

If a motion to compel brought under Federal Rule of Civil Procedure 37(a) is granted, the court "must" order attorney fees. However, if "the opposing party's nondisclosure, response, or objection was substantially justified," or if "other circumstances make an award of expenses unjust," the court cannot order payment. Fed. R. Civ. P. 37(a)(5).

The Sixth Circuit has developed a four-factor test when assessing whether sanctions under Rule 37 are appropriate:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Doe v. Lexington-Fayette Urban Co. Gov.*, 407 F.3d 755, 766 (6th Cir. 2005) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)).

Here, the court has granted Plaintiff's motion to compel. The information Plaintiff sought is certainly relevant to her claim. Without basic discovery into Plaintiff's treatment working for Defendant, the reasoning that went into her demotion and firing, the policies and practices of Defendant utilized with regard to disabilities, and the experiences of other employees similarly situated to Plaintiff, it is hard to see how Plaintiff can investigate, depose witnesses, and build a case of discrimination. Defendant provided no legal analysis to support its earlier assertion that Plaintiff's requests were irrelevant and too burdensome. Arguments for attorney-client privilege and work product are unsubstantiated and borderline frivolous. Privacy concerns should be solved by Plaintiff's privacy stipulation or a court order.

The court could find that Defendant acted with "fault," and given a discovery cutoff of May 1, 2020, the court could find that Plaintiff was prejudiced by Defendant's refusal to cooperate. *Lexington-Fayette Urban Co. Gov.*, 407 F.3d at 766.

15

Nonetheless, the court has not provided a warning to Defendant. *Id.* It will do so now. If Defendant persists with its current behavior, providing boilerplate responses to basic and highly relevant discovery requests, the court will consider sanctions, including attorney fees. The court expects Defendant will fully comply with this order and provide the requested responses and records.

A second reason supporting the award of no sanctions is the absence of any apparent attempt by Plaintiff to seek concurrence before filing this motion, as required by Local Rule 7.1(a). E.D. Mich. L.R. 7.1(a)(1) (emphasis added) ("The movant *must* ascertain whether the contemplated motion . . . will be opposed," and "[i]f concurrence is not obtained, the motion . . . *must* state [so]"). This court expects that the moving party will have provided to the non-moving party an explanation of the facts and law at issue and provided a clear opportunity for the non-moving party to realize that it needed to cure the deficit, provide the materials sought, or do whatever the situation called for. Plaintiff claims to have mailed a letter requesting discovery on February 26, 2020, twenty days before filing her motion. (ECF No. 13, PageID.61, ¶ 3.) There is no evidence Plaintiff notified Defendant of her intent to file a motion to compel or attempted to obtain a concurrence before filing the motion.

### J.  Discovery Deadline

Recent events relating to the Coronavirus Disease (COVID-19) outbreak have affected the timeline of discovery. On March 13, 2020, the Eastern District of Michigan issued an administrative order postponing in-court appearances before any District Judge or Magistrate Judge. United States District Court Eastern District of Michigan, Administrative Order 20-AO-021 (2020). The outbreak and spread of COVID-19

resulted in a declaration of emergency from both the federal government and the State of Michigan. Given the substantial travel restrictions around the country and guidelines issued by the Centers for Disease Control and Prevention regarding social distancing, the court finds it necessary to postpone the court's original discovery cutoff. Centers for Disease Control and Prevention, *Social Distancing, Quarantine, and Isolation* (last visited April 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html. (ECF No. 11 (Scheduling Order).)

Discovery is currently due by May 1, 2020. (ECF No. 11, PageID.41.) To allow Plaintiff adequate time to obtain interrogatory answers and records from Defendant and with consideration of substantial limitations imposed on both parties as a result of the COVID-19 outbreak, the discovery cutoff will be extended to June 30, 2020.

## IV. CONCLUSION

Despite supplementing its original discovery responses, Defendant's responses remain inadequate. The court will grant Plaintiff's motion to compel. Although Defendant is not expected to provide information it does not have, Defendant must answer fully Plaintiff's interrogatories and produce records Plaintiff has requested. Failure to do so may result in sanctions. Accordingly,

IT IS ORDERED that Plaintiff's "Motion to Compel Discovery" (ECF No. 13) is GRANTED.

IT IS FURTHER ORDERED that the discovery cutoff is EXTENDED to **July 6, 2020**.

s/Robert H. Cleland                              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 15, 2020

17

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 15, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                                    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-12945.NICHOLS.MotiontoCompel.RMK.RHC.4.docx